Bennie E. JETER et al., Appellants,

v.

ASSOCIATED RACK CORPORATION, Appellee.

No. 8757.

Court of Civil Appeals of Texas, Texarkana.

Aug. 26, 1980.

Rehearing Denied Nov. 10, 1980.

James P. Bradley, Richards, Harris & Medlock, Dallas, James C. Henry, Burke, Price & Henry, Houston, for appellants.

Donald E. Godwin, C. Wesley Jeanes, Seay, Gwinn, Crawford, Mebus & Blakeney, Dallas, for appellee.

RAY, Justice.

This is an appeal from a judgment granting a permanent injunction and awarding actual and exemplary damages in the total sum of $100,000.00. Appellee (plaintiff), Associated Rack Corporation, brought suit against appellants (defendants), Bennie E. Jeter, Erin T. Jeter, Joe Steven Anderson and Rack Engineering Company, Inc., seeking damages and injunctive relief on the theory that appellants misappropriated confidential business information. The case was tried to a jury, and based upon the jury's verdict the trial court entered its judgment awarding appellee actual and exemplary damages and injunctive relief. Appellants have perfected their appeal and submit 18 points of error for our consideration.

Appellee Associated Rack Corporation is engaged in the design, manufacturing and marketing of electroplating racks. The company operates in Texas through one of its subsidiaries, Southwestern Rack Company, located in Grand Prairie. Appellants Bennie Jeter, and wife, Erin Jeter, were the plant manager and assistant plant manager, respectively, of appellee's Southwestern Rack divisions from 1971 until their termination on May 27, 1977. Appellant Joe Anderson is Mrs. Jeter's brother and was at different times employed by division of appellee in Chicago and Grand Prairie. Anderson left the employ of appellee in December of 1976. While holding positions with the company, appellants had access to certain confidential information utilized by Southwestern Rack Division, including customer lists, pricing cards, product sketches and sample contact tips, a customized part of the rack.

Between December of 1976 and May of 1977, the appellants began considering the idea of leaving Associated Rack and forming their own company. Their plan was to go into competition with the appellee. It is undisputed that the appellants discussed their plans with several other employees of Associated Rack. Some were asked if they would care to follow the Jeters when they eventually started their business. During this time, Erin Jeter had begun to collect sample rack tips. The alleged purpose was to facilitate the design of a similar product when the appellants subsequently went into business. Several other employees assisted Mrs. Jeter in collecting the rack tips at her request.

On May 27, 1977, the Jeters' employment with Associated Rack was terminated. The following day, Bennie Jeter, accompanied by an employee of Associated Rack, William Wall, returned to the offices of the appellee. It is undisputed that at this time, Bennie Jeter did collect and photocopy various items of business information and data belonging to the appellee, including customer lists, pricing cards and product sketches. The purpose of such action, as testified to by Bennie and Erin Jeter, was to facilitate the formation of their company, Rack Engineering, Inc. The Jeters and Anderson own equal interests in Rack Engineering, Inc.

The appellants' points of error are summarized and discussed as follows:

(1) The trial court failed to submit an "ultimate" or controlling issue to the jury;

(2) The court erred in admitting testimony concerning an oral non–competition agreement because of its prejudicial and inflammatory nature;

(3) Testimony concerning a prior injunctive order violated an order granting a motion in limine;

(4) The trial court erred in commenting on the weight of the evidence;

(5) The court erred in allowing appellee to file a trial amendment;

(6) There was no evidence or insufficient evidence to support the jury's findings; and

(7) The court erred in failing to sever appellee's action for equitable relief.

## ULTIMATE OR CONTROLLING ISSUE

The primary emphasis of appellants' argument is that the trial court failed to submit the case on a proper controlling issue. Appellants contend that the issue of the existence of a conspiracy was a subordinate issue to the question of whether there was any independent, actionable wrong committed by the appellants which gave rise to an alleged conspiracy, i. e., appellants argue that the controlling issue would have inquired into the use of trade secrets, the breach of fiduciary duties, the breach of an employment agreement or the interference with the contractual relations between Associated Rack and its customers.

■ A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854 (Tex.1968); *International Bankers Life Insurance Company v. Holloway*, 368 S.W.2d 567 (Tex.1963).

Throughout the trial, the appellants insisted that they appropriated and accumulated the business information belonging to Associated Rack for the sole purpose of going into competition with the appellee. The central thrust of appellants' argument is that this information was readily accessible on the open market. There was testimony that industry–wide manuals provide design and manufacture information concerning electroplating racks. There was testimony that at times customers or purchasers of such racks would allow suppliers to photograph the racks. Design modifications could be made from such photos. This, appellants contend, destroys the confidential nature of the information. In essence, appellants contend that the existence of a lawful means of acquiring the information precludes recovery for the use of unlawful means.

The same argument was presented to, and rejected by, the Texas Supreme Court in *K & G Oil Tool & Service Company v. G & G Fishing Tool Service*, 158 Tex. 594, 314 S.W.2d 782 (1958), *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 149 (1958). There the Supreme Court quoted language from other jurisdictions holding that it is unquestionably lawful to gain possession, through proper means, of a competitor's product and, through inspection and analysis, create a duplicate, unless the item is patented. However, the mere fact that such lawful acquisition is available does not mean that he may, through breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis.

■ The evidence in the instant case clearly shows that Associated Rack considered its customer lists, pricing cards and rack designs to be confidential material. Furthermore, it is uncontroverted that the appellants accumulated these items both during and immediately after their employment with the appellee. The general rule is that an employee has a duty not to disclose the confidential matters of his employer. *Lamons Metal Gasket Co. v. Traylor*, 361 S.W.2d 211 (Tex.Civ.App. Houston 1962, writ ref'd n. r. e.); Restatement (Second) of Agency § 396(b) (1958). The fact that this information might have been available on the open market is not determinative. The primary issue is whether the appellants engaged in a course of conduct to obtain access to confidential business information from the premises of Associated Rack, without permission in order to facilitate the forming of their new corporation.

Special Issue No. 1 as submitted to the jury was as follows:

"Do you find from a preponderance of the evidence that defendants, by using any of the properties obtained from the premises of plaintiff, engaged in a conspiracy to divert and take away the customers of plaintiff?

Answer 'They did' or 'They did not'.

ANSWER: They did"

■ This question contains several of the elements necessary to submit to the jury the issue of whether the appellants conspired to and actually did wrongfully misappropriate the confidential business property of Associated Rack. However, the element as to whether these items were "confidential" is not touched. The absence of an issue inquiring into the confidential nature of the business property, however, is not fatal to appellee's recovery.

■ Under the "cluster of issues" principal stated in Rule 279, Tex.R.Civ.P., when a ground of recovery consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery are submitted and answered by the jury, and one or more issues are omitted, without objection by the party complaining of the judgment, then the omitted issue, if raised and supported by the evidence, must be deemed as found by the trial court in such a manner as to support its judgment. *Kirk v. Standard Life and Accident Insurance Co.*, 475 S.W.2d 570 (Tex.1972); *Wichita Falls & Oklahoma Ry. Co. v. Pepper*, 134 Tex. 360, 135 S.W.2d 79 (1940).

A careful review of the record convincingly establishes the confidential nature of the items in question. The time necessary for Associated Rack to accumulate product designs and to develop a competitive customer listing and pricing formula, emphasizes the confidential nature of this information.

■ There was sufficient evidence for the trial court to have concluded that the information taken by appellants was confidential.

## ADMISSION OF TESTIMONY REGARDING AN ORAL NON–COMPETITION AGREEMENT

■ Associated Rack pled alternative causes of action, including a breach of a non–competition agreement. Evidence was admitted concerning the company's policy that plant managers at the appellee's various divisions had orally agreed not to compete upon their termination of employment. However, it is clear that at the time of submission of the case to the jury, appellee had abandoned this cause of action. The cause was submitted solely on the theory that the appellants conspired to misappropriate the confidential business information of their employer. While evidence of a non–competition agreement may be irrelevant as to whether the appellants conspired to misappropriate confidential information, it does not constitute reversible error under Rule 434, Tex.R.Civ.P.

## MOTION FOR MISTRIAL

■ Appellants complain that the trial court committed reversible error in failing to declare a mistrial after appellee's witness testified that the appellants had returned the business information to appellee under

court order. A motion in limine had been granted forbidding any mention of the issuance of a prior temporary injunction. The appellants have not shown how they were harmed in this matter. A trial judge is vested with broad discretion in the manner in which a trial is controlled, and a judgment will not be reversed unless probable prejudice is shown. *Fulmer v. Thompson*, 573 S.W.2d 256 (Tex.Civ.App. Tyler 1978, writ ref'd n. r. e.).

## COMMENT ON THE WEIGHT OF THE EVIDENCE

■ In Point of Error No. 9, the appellants complain that the trial court made an erroneous comment on the weight of the evidence and that such comment influenced and prejudiced the jury against the appellants. We find no merit in this point since the court asked a question of appellants' counsel. Mr. Ben Jeter had been asked if he were actively entertaining going into business for himself between January and March, 1977. His answer was that, "I don't believe so. Just considering it." Subsequently, appellants' counsel asked Jeter if he spent any of his personal funds for equipment which he would use if he ever started a company on his own, and Jeter's answer was that he had. Jeter was then asked how much money he had spent and he answered, "Somewhere in the neighborhood of $1,500.00 and $1,600.00, something like that." Upon objection of counsel for Associated Rack, appellants' counsel stated to the court the following:

> "The relevance, I think, Your Honor, is this. That if we can show the amount of money that it takes to put one of these organizations together and the amount of money that he has spent, we can show just exactly how serious he was really intending to go into business."

The court then asked the question, "Well, I don't think there is any question he was serious. He said that, didn't he?" Appellants' counsel answered, "No."

The court stated, "Well, I don't see what the amount of money has to do with it. I will sustain the objection."

This Court has determined that the appellants have failed to show such question to be so prejudicial as to require a reversal of this case. Appellants have not sustained their burden of showing that the purported statement–question caused the jurors to believe that the trial court was conveying to the jury his opinion of the evidence and that such statement–question probably misled the jury. *Texas Employers' Ins. Ass'n v. McKay*, 146 Tex. 569, 210 S.W.2d 147, 149 (1948). Point of Error No. 9 is overruled.

## APPELLEE'S TRIAL AMENDMENT

■ Rule 66, Tex.R.Civ.P., provides that the trial court shall freely allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that such amendment will prejudice the maintaining of his defense. The court has wide discretion in the matter. *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605 (1948). No abuse has been shown in the instant case. The trial court permitted appellee to file a trial amendment stating a cause of action against the appellants on a theory of conspiracy to misappropriate and *unlawfully use the* property of the appellee. It is the opinion of this Court that the trial court did not abuse its discretion in allowing the trial amendment and that the evidence was sufficient to sustain the jury's answer to Special Issue No. 1. The allowance of a trial amendment will not result in a reversible error in the absence of a plea of surprise *and* a request for postponement or continuance. *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 758 (Tex.Civ.App. San Antonio 1977, no writ). Appellants did not plead surprise or request a continuance. Appellants have thus waived their objections to appellee's filing of a trial amendment. Appellants' Point of Error No. 12 is overruled.

## JURY TRIAL ON EQUITABLE RELIEF

■ Appellants complain of the trial court's affording the appellee a jury trial on its action for equitable relief. The law in Texas is that the right to a jury trial ex-

tends to disputed issues of fact in equitable as well as legal proceedings. Tex.Const. art. V, §§ 8 and 10; *Reynolds–Penland Co. v. Hexter & Lobello,* 567 S.W.2d 237 (Tex. Civ.App. Dallas 1978, Dism'd Agr.). In response to Special Issue No. 7, the jury found that the conspiracy had not terminated. On this basis, the trial court granted the injunction. The evidence substantiates the jury's finding and it is our opinion that the appellee was entitled to an injunction to stop the ongoing conspiracy. It is our further opinion that future damages would have been difficult if not impossible to ascertain and thus the trial court was justified in granting injunctive relief. The appellee had the right to elect to maintain an action at law for damages for its past injuries and at the same time seek equitable relief through an injunction or other extraordinary remedy to abate the continuance of the injury. The existence of a remedy at law is not ground for denial of injunctive relief unless the legal remedy is as practical and efficient to the ends of justice as the equitable remedy. *Sumner v. Crawford,* 91 Tex. 129, 41 S.W. 994, 995 (1897); *McGonagill v. Hide–A–Way Lake Club, Inc.,* 566 S.W.2d 371 (Tex.Civ.App. Tyler 1978, no writ). The trial court did not abuse its discretion in granting the injunction.

Appellants' points of error are overruled. The judgment of the trial court is affirmed.